# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JEFFRY D. JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-15-193-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Jeffry D. Johnson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the decision of the Commissioner is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born February 18, 1966, and was forty-seven years old at the time of the administrative hearing (Tr. 124, 130). He has a high school education, and has worked as a security guard (Tr. 46, 142). The claimant alleges he has been unable to work since an amended onset date of April 23, 2011, due to back pain (Tr. 12, 142).

## Procedural History

On May 25, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 124-34). His applications were denied. ALJ James Stewart conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated August 30, 2013 (Tr. 12-20). The Appeals Council denied review; thus, the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except he could lift up to ten pounds at any one time, occasionally lift and carry articles weighing less than ten pounds, sit for six hours during an eight-hour workday, stand/walk for two hours during an eight-

hour workday, push and pull with the upper and lower extremities consistent with the limits on lifting/carrying, and could perform no work that involved more than thirty minutes on an intermittent basis of stooping, kneeling, crawling, or crouching (Tr. 15). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was other work he could perform in the regional and national economies, *i. e.*, touch-up screener, optical goods assembler, and order clerk (Tr. 20).

## Review

The claimant contends that the ALJ erred by failing to properly evaluate his credibility and obesity. In support of his first contention, the claimant argues that the ALJ failed to properly account for his pain, determined his RFC before evaluating his credibility, did not specify what portion of his testimony was not credible, and ignored his treating physician's findings. The Court agrees with both contentions.

The ALJ found that the claimant's degenerative disc disease of the lumbar spine (status post-surgery 12/21/11) and obesity were severe impairments (Tr. 14). The relevant medical evidence reveals that the claimant was regularly treated at W.W. Hastings Hospital ("WWH") for chronic back pain from August 24, 2009, through May 20, 2011(Tr. 259-327). The diagnoses related to his disability claim included chronic back pain, lumbar radiculopathy, and lumbago, and his treatment largely consisted of medication management (Tr. 259-327).

On November 3, 2010, the claimant presented to The Orthopaedic Center with low back pain and entered into a pain management agreement (Tr. 204-05). Dr. Jean Bernard

noted the claimant did not have any problems getting on or off the exam table, ambulated into the clinic without difficulty, did not use or need a walking device, and did not wear a lumbar support device (Tr. 205).  At follow-up appointments on December 2, 2010, and February 16, 2011, the claimant rated his pain level at ten on a ten point scale (Tr. 199-202).  Dr. Bernard noted on February 16, 2011, that the claimant had been without medications for a month, and recommended a lumbar epidural steroid injection (Tr. 201).  The claimant received the injection on May 2, 2011, and reported a few weeks later that it wasn't effective (Tr. 259, 341-42).

On July 16, 2011, Dr. Traci L. Carney conducted a physical consultative examination of the claimant (Tr. 441-47).  Dr. Carney noted that the claimant's cervical spine and thoracic spine were non-tender with full range of motion, but that he had decreased range of motion in his lumbar-sacral spine associated with tenderness to palpation and paraspinal muscle spasms bilaterally (Tr. 443).  The claimant's straight leg raising reflex was negative bilaterally (Tr. 443).  Dr. Carney observed that the claimant had a safe and stable gait with appropriate speed, did not ambulate with an assistive device, had no identifiable muscle atrophy, had normal heel/toe walking, and had a tandem gait within normal limits (Tr. 443).  She assessed the claimant with traumatic motorcycle accident resulting in severe scarring on his abdomen and back, lower back pain secondary to motorcycle accident (disc disease), and hypertension (Tr. 443).

On August 26, 2011, the claimant presented to Dr. Scott Dull and reported constant back pain that radiated down his left leg, increased with sitting and standing, and decreased with lying down (Tr. 458).  Dr. Dull noted the claimant's back was non-tender,

but that he had limited range of motion (Tr. 459). He also noted that the claimant had normal muscle strength and tone apart from slightly decreased power in his extensor halluces longus muscle on his left foot, decreased sensation on the top of his left great toe, and a slightly antalgic gait (Tr. 459). Dr. Dull assessed the claimant with progressive axial low back pain and lower left extremity radiculopathy secondary to L4/5 degenerative disc disease/herniated disc (Tr. 459). He noted the claimant did not respond to conservative management and recommended surgery consisting of an L4/5 posterior decompression and fusion with instrumentation (Tr. 459). Except for pre-operative testing on December 12, 2011, which included x-rays revealing mild spondylotic changes at L5-S1 with partial lumbarization of S1, cardiac testing, and lab work, there are no records from the claimant's back surgery, which was performed on December 21, 2011 (Tr. 466-86, 489, 493).

WWH provided the claimant's post-surgery care between December 30, 2011, and February 29, 2012 (Tr. 489-501). There are no treatment notes between March 2012 and September 2012. On October 31, 2012, the claimant presented to Dr. Douglas Young at WWH and reported continuing back pain and weakness as well as numbness in his heel that began two months earlier (Tr. 489). Dr. Young noted the claimant's back was bilaterally tender, his flexion was fifteen degrees, and his extension, right lateral bend, and left lateral bend were less than fifteen degrees (Tr. 489). He observed the claimant's gait and posture were normal, and that he had normal sensation and reflexes in his lower extremities (Tr. 489). Dr. Young stated that the claimant was not performing his back exercises properly and opined that he was not motivated to do them (Tr. 490). Dr. Young

prescribed two months of pain medication for use during what he referred to as an "acute phase of restratching [sic]." (Tr. 490).

At the administrative hearing, the claimant testified that his surgery increased his lower back pain and left heel numbness, but improved the radiating pain in his legs (Tr. 38-39, 42). He further testified that he experiences muscle spasms when he stands for prolonged periods, and occasionally when he sits (Tr. 43). Regarding his medications, the claimant stated he was unable to afford his pain medication, and that it was minimally effective the single occasion he did purchase it (Tr. 40). He stated pain impairs his mobility and precludes him from sitting for long periods of time (Tr. 40). The claimant further stated that lying down on his stomach most effectively relieves his pain, and that he lies down for pain relief a total of six hours during the day (Tr. 41).

In his written opinion, the ALJ summarized the claimant's testimony as well as the medical record. He found the claimant not entirely credible because (i) he had a post-surgery lapse in treatment between March and October 2012, (ii) he did not produce the requested post-surgery treatment notes, and (iii) his alleged pain level was inconsistent with Dr. Bernard's observations and Dr. Carney's consultative exam (Tr. 17-18). The ALJ stated "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. 16-17). After briefly mentioning the claimant's

pain to discredit his subjective statements, the ALJ did not revisit the issue of the claimant's pain in his decision.

In support of his contention that the ALJ improperly evaluated his credibility, the claimant argues that the ALJ failed to properly account for his pain. In this regard, despite finding the claimant suffered from a severe pain-inducing impairment, the ALJ *failed to evaluate or even mention* the effect of this pain-inducing impairment upon the claimant's RFC. "Pain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Thompson v. Sullivan*, 987 F.2d 1482, 1490-91 (10th Cir. 1993)*, citing Ray v. Bowen*, 865 F.2d 222, 225 (10th Cir. 1989) and *Gossett v. Bowen*, 862 F.2d 802, 807-08 (10th Cir. 1988). In assessing allegations of pain, an ALJ "must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992), *citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987). Because there was objective evidence that the claimant had a pain-producing impairment, *i. e.*, degenerative disc disease of the lumbar spine, the ALJ was required to consider the claimant's pain and the extent to which it was disabling. And because the ALJ found that the claimant's degenerative disc disease of the lumbar spine was a severe impairment at step two, *i. e.*, having more than a minimal effect on his basic work activities, it is "impossible to conclude at step four that

h[is] pain was insignificant." *Baker v. Barnhart*, 84 Fed. Appx. 10, 13 (10th Cir. 2003). The Commissioner spent a great deal of time in her brief defending the ALJ's credibility analysis, however, she failed to point to any evidence showing the ALJ properly assessed the claimant's pain.

Additionally, the ALJ found at step two that the claimant's obesity was a severe impairment, then ignored this "severe" impairment at step four. An explanation should be provided when, as here, an impairment found to be severe at step two is determined to be insignificant in later stages of the sequential evaluation. *See, e. g., Timmons v. Barnhart,* 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five."); *Hamby v.* Astrue, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of the impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work."). Thus, the ALJ should have explained why the claimant's obesity did not call for corresponding physical limitations. A recitation of the claimant's reported BMI does not constitute a proper consideration of the claimant's severe impairment of obesity, and the ALJ's failure to connect the claimant's obesity to the claimant's RFC, or to determine whether the medical evidence demonstrated any additional or cumulative effects, was error. *See Fleetwood v. Barnhart,* 211 Fed. Appx. 736, 741–42 (10th Cir. 2007) (noting that "obesity is [a] medically determinable impairment that [the] ALJ must consider in evaluating disability; that [the] combined effect of obesity with other impairments can be greater than effects of each

single impairment considered individually; and that obesity must be considered when assessing RFC ."), *citing* Soc. Sec. Rul. 02–1p, 2000 WL 628049, at *1, *5–*6, *7; *Baker,* 84 Fed. Appx. at 14 (noting that the agency's ruling in Soc. Sec. Rul. 02–01p on obesity applies at all steps of the evaluation sequence).

Because the ALJ failed to properly analyze the claimant's credibility, particularly with regard to the requisite pain analysis, as well as his obesity, the Commissioner's decision must be reversed and the case remanded for further analysis by the ALJ. If such analysis results in adjustments to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 1st day of September, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**